UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**PAUL REIF,**
c/o Rettko Law Offices, S.C.
15460 W. Capitol Drive, Ste. 150
Brookfield, WI  53005,

**STEVEN BOEHM**
c/o Rettko Law Offices, S.C.                    Case No. 16-V-766
15460 W. Capitol Drive, Ste. 150
Brookfield, WI  53005,

     Plaintiffs,

     v.


**STATE OF WISCONSIN, DEPARTMENT OF CORRECTIONS,**
3099 E. Washington Ave.
Madison, WI  53707,

**DENISE SYMDON,**
individually and in her official capacity
3099 E. Washington Ave.
Madison, WI  53707,

     Defendants.

---

## COMPLAINT
---

The plaintiffs, Paul Reif and Steven Boehm, by their attorney, William R. Rettko, hereby alleges and shows to the court as follows:

### NATURE OF THE CASE

This action is brought to secure the plaintiffs' First Amendment right to freedom of speech without incurring a penalty in violation of 42 U.S.C. § 1983.

### JURISDICTION AND VENUE

Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

## PARTIES

1. Plaintiff, Paul Reif ("Reif"), is an adult resident of Waukesha County, State of Wisconsin, has been employed by the State of Wisconsin Department of Corrections ("DOC") continuously since 1992, and at all material times hereto held the position of a probation and parole agent (hereinafter "absconder agents") in the absconder unit (n/k/a and hereinafter referred to as "MCORP Unit") which is a unit that specializes in locating and apprehending parolees who are in violation of the terms of their parole.

2. Plaintiff, Steven Boehm ("Boehm"), is an adult resident of Fond du Lac County, State of Wisconsin, has been employed by the DOC continuously since 1991, and at all material times hereto was an absconder agent in the MCORP Unit that specializes in locating and apprehending parolees who are in violation of the terms of their parole.

3. Defendant, State of Wisconsin Department of Corrections ("DOC") is an agency of the State of Wisconsin with its principal offices located at 3099 E. Washington Street, Madison, WI 53707, and is and was at all material times hereto the employer of all DOC absconder agents including, but not limited to, plaintiffs.

4. Defendant, Denise Symdon is the Administrator in charge of the DOC Division of Community Corrections ("DCC") responsible for all DOC absconder agents, and in such position acted under the color of law in making all personnel decisions concerning the plaintiffs as set forth herein and is a party to this action in both her individual and official capacity.

## STATEMENT OF CLAIMS

5. In or about December 1997, the State Legislature with the approval of then Governor Tommy Thompson approved funding for the DOC to create a special unit of agents devoted solely to tracking down and apprehending absconders from probation, parole and intensive sanctions programs in Milwaukee County because of public safety concerns regarding the large number of absconders on the streets and not accounted for as there were an estimated

64,745 offenders on probation and parole of which about 7,982 had not reported to their probation agents and were considered absconders causing the State of Wisconsin to improve public safety with funding for the MCORP Unit.

6.      From the inception of the MCORP Unit in or around April 1998, absconder agents found themselves, other law enforcement officers and the general public in peril during many attempts to apprehend absconders because they were not able to carry firearms of any sort, and by January 1999 the Absconder Unit made a request with DOC administrators for absconder agents to be armed with firearms for their protection, and the protection of the absconder's family and the general public present when absconders attempt to flee or act in a violent life threatening manner.

7.      By June 1999, after getting no response from DOC administration to the request to arm MCORP Unit agents with firearms, Reif met with a policy advisor for then Governor Thompson to discuss the arming of MCORP Unit agents with firearms and the need to do so, but by August 1999, Reif was notified by that policy advisor this idea was not going forward because DOC management did not support the idea of arming MCORP agents.

8.      Yet, by January 2000, then State Representative Scott Walker after speaking with Reif and other MCORP Unit agents and learning of the danger imposed for agents and the general public in apprehending absconders that flee or respond in violence, introduced legislation to arm these agents with firearms while acting within their official capacity.

9.      In March 2000, Reif testified before the Wisconsin Legislature regarding the many dangerous situations agents of the MCORP Unit faced and that other law enforcement officers were reluctant and frustrated to assist agents due to their lack of being armed.

10.     DOC administration continued to oppose the arming of MCORP Unit agents with firearms throughout the legislative process and began to change the work environment creating a

hostile work environment for agents in the MCORP Unit, but the bill was not brought for a vote before the State Senate.

11. In March 2001, Reif again testified in front of the Wisconsin Legislature in support of a new bill to allow MCORP Unit agents to have firearms in which he reiterated that the MCORP Unit was unable to completely fulfill its mission to keep the community safe from absconders until its agents were allowed to carry firearms, but the legislation that would allow MCORP Unit agents to be armed with firearms was not passed in large part due to the opposition by DOC/DCC Administration.

12. For the next several years, DOC/DCC administrators threatened MCORP unit agents that the unit was going to be disbanded and the collaboration between agents and police officers was severed, thereby silencing agents in their attempts to be armed.

13. On October 29, 2013, after many internal attempts to correct how offenders were tracked, Reif and Boehm were in contact with State Representative Sanfelippo regarding public safety issues on absconders all of which caused Representative Sanfelippo to inquire with DOC Administration as to the number of absconders residing in his district, and information on their status and accountability as well as information on the DOC chain of command.

14. On December 2, 2013, Reif and Boehm conducted a wanted check.

15. On December 9, 2013, both Reif and Boehm were placed on administrative leave pending work rule violations for the December 2, 2013 wanted check.

16. In January 2014, Representative Sanfelippo was asked why he was interested in the information he requested in October 2013.

17. In February 2014, Reif and Boehm were removed from administrative leave, but Reif was transferred to a different district away from Boehm.

4

18. On July 18, 2014, after Representative Sanfelippo and members of his staff made continued follow up requests and visits to the DOC, the information originally requested in October 2013 was supplied.

19. Over the next year, both Reif and Boehm stayed in touch with Representative Sanfelippo's office regarding public safety issues with absconders and on September 25, 2015, Representative Sanfelippo introduced legislation that defined absconder agents in the MCORP Unit allowing those agents to carry firearms while acting in their official capacity.

20. On October 8, 2015, a public hearing before the State Legislature occurred in which discussion from those in attendance was solicited causing Administrator Symdon to testify in opposition to arming MCORP Unit agents while downplaying the dangerous threats absconders posed to the community upon which Reif and Boehm presented circumstances detailing the dangers absconders pose to the public.

21. On January 26, 2016, Representative Sanfelippo met with the DOC Legislative Liaison, Don Friske, who told Sanfelippo, "Well, even if this bill passes, the same agents working here now may not be working here in the future to take full advantage of this legislation."

22. On February 2, 2016, both Reif and Boehm were notified by DCC Administrator Symdon that they were being reassigned from the MCORP Unit to attend Agent Basic Training at the Corrections Training Center and that these assignments would remain in effect until the conclusion of personnel investigations initiated by DOC/DCC.

23. At that same time, Reif and Boehm experienced intimidation, threats, isolation and fear of false accusations of wrongdoing causing Reif to file for FMLA on February 24, 2016 citing to the stress he was suffering as a result of his removal from the MCORP Unit, together with the years of abuse and hostile work environment for having spoken out on public safety concerns.

24. On March 12, 2016, Representative Sanfelippo wrote to Administrator Symdon regarding the reassignments of and personnel investigations into Reif and Boehm demanding information as to why these actions were taken, the accusations or rule violations being levied against them, whether formal complaints were received against them, the procedure for conducting personnel investigations, among other requests for comparable reassignments and investigations. To date, no such response has been provided to Representative Sanfelippo's written request.

25. On March 14, 2016, Reif and Boehm wrote to their supervisor among other DOC and State officials requesting that the retaliation against them for speaking in favor of the bill allowing MCORP Unit agents to carry firearms while conducting their official duties cease by demanding that they be returned to their positions in the MCORP Unit, that management stop scrutinizing their performance, that DCC management stop the wasted public funds to investigate their actions including DOC's failure to follow due process in those investigations, and that DCC staff stop placing the public and employees at risk by failing to hold DOC offenders accountable for violations of rules of community supervision, and by failing to provide the necessary tools to agents for their and the public's protection.

26. On April 4, 2016, DOC through its Bureau of Personnel & Human Resources responded to the Boehm/Reif letter of March 14th whereby DOC denied that the personnel investigation from the August 26, 2015 incident was in retaliation for their public speech to the State Legislature of October 8, 2015 while admitting Administrator Symdon initiated the investigation in February 2016.

27. On April 18, 2016, the DOC/DCC conducted interviews on Reif and Boehm concerning their actions during the August 26, 2015 incident.

28. As the DOC/DCC personnel investigation progressed, Reif and Boehm requested information as to which policies, directives and/or rules were alleged to have been violated

during the August 26, 2015 incident, and each were denied a summary of the investigative findings to review before and after their pre-disciplinary meetings.

29. During the investigatory process, Reif was required to attend two follow-up interviews, and was docked six days of pay as a penalty for failing to make himself available for an interview originally noticed on June 2, 2016 for June 6, 2016 because his personal representative was unable to attend a hearing on June 6, 2016. This action was taken even though Reif notified DOC/DCC interviewers on June 2nd of his personal representative's conflict and requested the interview be scheduled on June 14th, 15th, 16th, 22nd or 23rd.

30. On August 8, 2016, Boehm received a written reprimand for his actions in the August 26, 2015 incident and was then returned on August 15, 2016 to the MCORP Unit in District 3 where the hostile work environment and isolation continued.

31. On August 30, 2016, Reif received a notice of discipline for a one (1) day suspension without pay for allegedly violating DOC work rules #2 & #31 for five unexcused or excessive absences occurring from April 2016 through August 1, 2016 which followed a written reprimand on July 22, 2016 for having five unexcused or excessive absences during March and April 2016.

32. On August 30, 2016, Reif also received a three (3) day suspension without pay for allegedly violating DOC work rules #2 & #4 for his actions during August 26, 2015 incident.

33. On September 8, 2016, Reif was notified by Administrator Symdon that as of September 12, 2016, he was being moved out of the MCORP Unit and being reassigned as a generic probation and parole agent with required Agent Basic Training to begin on October 10, 2016 through December 7, 2016.

34. On September 12, 2016, Reif met with DOC/DCC supervisors, but due to the hostility he faced, had to leave work, was placed on FMLA by his psychological therapist until October 21, 2016.

7

35. On October 21, 2016, Reif's new supervisor, Ms. Kelber, faxed Reif's fitness for duty form to DCC administration and sent Reif to a cubicle previously occupied by a terminated employee that was covered in dust and had broken chairs.

## CAUSE OF ACTION FOR VIOLATION
## OF FIRST AMENDMENT RIGHT OF FREE SPEECH
## UNDER COLOR OF STATE LAW

36. Reallege and incorporate herein by reference paragraphs 1 through 35 of this Complaint as if set forth at length herein.

37. Reif and Boehm engaged in protected free speech by speaking out as citizens on a matter of great concern before the State Legislature regarding the public safety issues surrounding the arming of MCORP Unit agents with a firearm while conducting their official job duties to apprehend absconders from probation and parole, as the unit was originally formed by the State Legislature recognizing that absconders pose a great threat to the safety and welfare of the public.

38. Reif and Boehm's speech before the State Legislature regarding the need to arm MCORP Unit agents with firearms was attended by DOC and DCC Administration and was well known to Symdon who took steps to authorize the personnel investigations, reassignments, and ultimate disciplines rendered against Reif and Boehm, and caused these actions to be publicized throughout the MCORP Unit to silence any further support for legislation to arm MCORP Unit agents with firearms, thereby causing a chilling effect on the MCORP Unit and other generic agents.

39. Symdon acted under color of law in initiating the personnel investigations, issuing discipline for the alleged rule violations occurring from the August 26, 2015 incident, reassigning Reif out of the MCORP Unit and transferring Boehm to a different district which was without merit and contrary to the duties and responsibilities Reif and Boehm fulfilled on August 26, 2015.

40. Had Reif and Boehm not engaged in the protected speech, Symdon would not have deprived them of their First Amendment right of free speech as created by the United States Constitution which was a substantial motivating factor in Symdon's decision to authorize the initiation of the personnel investigation that ultimately concluded Reif and Boehm violated DOC work rules during the August 26, 2015 incident and to then reassign them out of the MCORP Unit which was made know to the entire MCORP Unit for the intent to silence other MCORP Unit agents and to humiliate, isolate and embarrass Reif and Boehm.

41. Symdon was acting under the color of law, but not within the scope of qualified immunity in retaliating against Reif and Boehm because her conduct violated the clearly established rights of Reif and Boehm not to be disciplined, reassigned, isolated, transferred to less desirable assignments, humiliated, embarrassed and placed on leave in retaliation for meritless allegations as a result of their speech on a matter of public concern and public safety made before the Wisconsin State Legislature.

42. As a direct and proximate cause of the defendants' actions of retaliation to cause personnel investigations and discipline to be issued against Reif and Boehm, and to place Reif on administrative leave from his duties, and to further transfer Reif and Boehm out of the MCORP Unit has caused Reif and Boehm to incur monetary damages, damages to his reputation, right to pursue economic goals, extreme mental anguish, physical suffering, the unnecessary use of sick leave, attorney fees and other expenses.

43. Administrator Symdon's actions were willful, wanton and an intentional disregard of Reif and Boehm's constitutional rights making punitive damages against her in her individual capacity appropriate and necessary to stop these repeated patterns from occurring.

**WHEREFORE**, Plaintiffs Paul Reif and Steven Boehm, respectfully request that this Court:

A. Assume jurisdiction of this case;

9

B. Declare that the defendants' retaliatory actions denied Reif and Boehm of their right to free speech in violation of the First Amendment to the United States Constitution, and enter a declaratory judgment to that effect;

C. Award compensatory damages against each defendant jointly and severally in the sum of $300,000 for each plaintiff;

D. Award punitive damages against defendant Administrator Symdon jointly and severally for each plaintiff in an amount to be determined by a trier of fact;

E. Grant reimbursement for all loss of wages and unnecessary use of sick leave incurred by each plaintiff;

F. Grant the plaintiffs their costs, disbursements and actual attorney fees in bringing this action;

G. Grant such further relief as the Court deems just and necessary.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Dated this 21st day of November, 2016.

          **RETTKO LAW OFFICES, S.C.**
          Counsel for Plaintiffs

          s/William R. Rettko
          State Bar No. 1002608
          15460 W. Capitol Drive, Suite 150
          Brookfield, WI 53005
          (262) 783-7200